STATE v. WILLIAM LLOYD.

*Forcible Trespass.*

1. To constitute the offence of forcible trespass, there must be actual demonstration of force in excess of a bare civil trespass, as with arms, or a multitude of attendants, so as to create or make imminent a breach of the peace,—approving *State* v. *Covington*, 70 N. C., 71.

2. Whether the general doctrine, that ownership of land bounded upon a highway giving the owner the right to the soil to the center of the way, applies to the streets of a city—*Quœre.*

(*State* v. *Covington*, 70 N. C., 71 ; *State* v. *Hinson*, 83 N. C., 640, cited and approved.)

INDICTMENT for forcible trespass tried at June Term, 1881, of WAKE Superior Court, before *Shipp*, *J.*

The defendant was charged with having forcibly and with a strong hand "entered the *premises* of one P. L. Spencer, and there remaining for one hour in the public road in front of the house of said Spencer, using profane and men- acing language towards him in the hearing of his wife and daughter, against the will of said Spencer, and refusing to leave when ordered so to do, the said Spencer being present and forbidding him so to enter," &c.

The evidence in the case is substantially as follows: The prosecutor, Spencer, was *in possession of a house and lot in the city of Raleigh.* Being so in possession and at home with his family on the day in question, the defendant, between whom and himself there had been bad blood for some time, drove up in a wagon immediately opposite the gate and called, when he went out to the gate where he found the defendant still sitting in the wagon in the middle of the road a few yards from the gate. The defendant asked a question in reference to the subject of their differences, to which he made a reply. Whereupon the defendant cursed him and called him a liar, and charged him with endeavoring to cheat his

step-daughter out of her property. Hearing the noise the wife of the prosecutor came out to the gate, when he ordered the defendant to leave, to which he replied that he would leave when he got ready, and called the prosecutor a "damned rascal." The prosecutor's wife then told him to leave, when he again said he would leave when he got ready, and continued to use insulting, violent and menacing language. The prosecutor finally told defendant to leave or else he would get his gun from the house and shoot him, in reply to which he dared the prosecutor to come into the road, which however he did not do. After remaining some ten or fifteen minutes the defendant drove off. The wife of the prosecutor testified that she prevented her husband from getting his gun and going into the street to defendant.

Verdict of guilty, judgment, appeal by defendant.

*Attorney General*, for the State.
*Mr. T. R. Purnell*, for the defendant.

RUFFIN, J. There seems to us to be several difficulties in the way of the state's maintaining this prosecution. Conceding it to be true generally, that the ownership of land bounded upon a highway carries with it the ownership of the soil to the center of the way, and that the law, nothing else appearing, will presume the one right from the other, we are still not entirely clear that the doctrine applies at all to the streets of a city, in which not only has the public for so long a time enjoyed the right of travel, but the city itself, the right to dig and construct sewers, lay pipe, and the like, thus appropriating to its use the *land* as distinguished from an easement. And supposing that the principle would ordinarily embrace persons owning lands lying in a city and bounded by the streets, we are not sure that we ought to allow the presumption to prevail against a defendant in an indictment, when the only description given, in the case,

of the possession of the prosecutor, is the above statement "that he was in possession of a house and lot in the city of Raleigh, and occupied the same with his family," without a word of explanation as to the situation of the house, or the character of his possession. These points however we do not decide, as there is another which in our opinion disposes of the case.

As has been repeatedly decided in this court, to constitute the offence of forcible trespass, there must be such force used as to exceed a bare civil trespass. There must be an actual demonstration of force, as with arms, or a multitude of attendants, so as to create or make imminent a breach of the peace. *State* v. *Covington,* 70 N. C., 71, and the cases there cited. After a careful examination of all the cases in our own state reports, and others, we have not found a single case in which the use of words however violent, insulting, and menacing they may have been, has been held sufficient to complete the offence, unless accompanied by some display of weapons, unusual numbers, or other outward sign of force; while on the other hand, we meet with several cautions from judges of the highest repute, against the growing tendency to magnify civil trespasses into public wrongs.

We cannot do better than refer to the opinion delivered by Judge BYNUM in *Covington's* case just cited. In a few words it covers the whole ground—stating the law and supporting it by just reasoning. In the conclusion of it he says, the law does not allow its aid to be invoked by indictment, for rudeness of language, or even slight demonstrations of force, against which ordinary firmness will be a sufficient protection.

In the case of this defendant, there was not a show of force, either actual or intended. Without leaving his wagon, standing in the middle of the street, he engaged in a mere war of words with the prosecutor, and nothing more.

The case of *State* v. *Hinson,* 83 N. C., 640, more nearly

resembles the present case than any to be found in our re-
ports, and that, as I learn from my associates, turned upon
the fact that the defendant, *armed, rode* with great rudeness
into the yard and up to the door of prosecutrix who was
alone, and though ordered to leave, refused to do so, but
continued to curse and insult her until she threatened to
call for assistance.   It was considered that the act of *riding*
into the yard was under the circumstances such a show of
force as warranted the conviction, especially as it was proved
by her very threat to call for assistance that she was put in
actual fear.   Here, there was no force used, and nothing
said or done which ought to have intimidated a man of
ordinary firmness.   Judgment reversed and *venire de novo.*

Error.   .                                      Reversed.